1
2
3
4
5
6
7

8          UNITED STATES DISTRICT COURT

9        FOR THE EASTERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11  EDUARDO GARCIA PLIEGO, an individual, | No.  1:23-cv-00858-KES-CDB |
| 12 | ORDER GRANTING IN PART AND |
| 13  Plaintiff, | DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| 14  v. | Doc. 27 |
| 15  WALMART, INC.; and DOES 1-100, inclusive, | |
| 16  Defendants. | |

17

18          Defendant Walmart, Inc. ("Walmart") moves for summary judgment.  Doc. 27 ("Def.'s

19   MSJ").  Plaintiff Eduardo Garcia Pliego ("Garcia Pliego") filed an opposition to the motion for

20   summary judgment, Doc. 32 ("Pl.'s Opp'n") to which Walmart replied.  Doc. 34 ("Def.'s

21   Reply").  The Court held oral argument on this matter on November 4, 2024, and took the matter

22   under submission.  Doc. 35.  For the reasons set forth below, Walmart's motion for summary

23   judgment is granted in part and denied in part.

24   **I.     Background**

25          On September 8, 2021, Garcia Pliego entered a Walmart store in Delano, California to

26   shop.  Pl.'s Opp'n, Ex. 1 (Pl.'s Response to Def.'s Statement of Undisputed Facts ("DSUF")) ¶ 4.

27   After Garcia Pliego made his purchase, he entered the men's restroom.  Def.'s Reply, Ex. 9

28   (Def.'s Resp. to Pl.'s Statement of Undisputed Facts "PSUF") ¶ 5.  While in the restroom, Garcia

Pliego slipped and fell.  PSUF ¶ 6.  He had not noticed water on the floor of the restroom upon entering, but after he fell, he noticed water on the floor and believed it to be the cause of his fall.  PSUF ¶ 7.  A few minutes later, Ramon Benge, a maintenance associate at Walmart, entered the restroom at 12:44:36 p.m. and saw a "medium sized puddle" of liquid on the ground, which he mopped.  PSUF ¶¶ 13, 18.  Neither party has been able to identify the source of the liquid.  DSUF ¶ 12.

Garcia Pliego entered the restroom at 12:41:19 p.m.  DSUF ¶ 9.  Security camera footage of the outside of the restroom entrance shows that two Walmart employees entered and exited the restroom only a few minutes before Garcia Pliego entered the restroom.  DSUF ¶¶ 5-8.  A former Walmart employee, Juan Nunez, entered the restroom three minutes and fifty-six seconds before Garcia Pliego entered.  DSUF ¶¶ 5, 9.  Nunez exited the restroom one minute and forty-five seconds before Garcia Pliego entered.  DSUF ¶¶ 8-9.[1]  Walmart employee Pablo Alonso entered the restroom three minutes and fourteen seconds before Garcia Pliego entered.  DSUF ¶¶ 6, 9.  Alonso left the restroom approximately fifteen seconds later.  DSUF ¶ 7; PSUF ¶ 2.  Additionally, after both employees had exited the restroom, an unknown individual entered the restroom for approximately a minute and a half, exiting thirty-five seconds before Garcia Pliego entered.  PSUF ¶¶ 4, 9.  The video footage of the restroom entrance begins approximately 57 minutes before Garcia Pliego entered the restroom.  *See* PSUF ¶ 53.  It shows that no employee entered the restroom with a cleaning cart in the 57 minutes before the accident.[2]  *Id.*

Nunez acknowledged that he did not intend to conduct a "sweep" of the restroom when he entered it, and he does not remember if he did so.  PSUF ¶ 11.  Alonso does not remember why

---

[1] Walmart states that Nunez exited the restroom one minute and twenty-five seconds before Garcia Pliego entered.  MSJ 10.  However, the video shows that Nunez exited the restroom at 12:39:34 p.m., one minute and forty-five seconds before Garcia Pliego entered at 12:41:19 p.m. The twenty-second discrepancy does not affect the analysis.

[2] Walmart asserts that the video shows a maintenance employee entered the restroom with a cart 57 minutes prior to Garcia Pliego entering the restroom.  *See* PSUF ¶ 16.  The video provided to the Court does not show a maintenance employee entering the restroom with a cart at any time during the 57 minutes captured.

2

he entered the restroom and does not remember what he did in the restroom.  PSUF ¶ 12.  Both

employees testified that they do not remember seeing any liquid on the floor of the restroom on

the date of the incident.  DSUF ¶¶ 10-11.  However, neither individual remembers any significant

details concerning the date of the incident.[3]  *See* Nunez Dep. 21:23-25; Alonso Dep. 78:24-82:5.

Nunez testified Walmart trained its employees on maintenance policies and procedures

through training videos, but he could not remember if the videos included any training concerning

the identification of hazardous conditions in restrooms.  Nunez Dep. 23:2-15.  Nunez testified that

Walmart's policies and procedures required associates to report any liquid hazards they identified

on the ground to maintenance or a supervisor.  Nunez Dep. 21:4-13.

Alonso testified that, if he had seen liquid on the floor, he would have cleaned it up or

reported it.  Alonso Dep. 135:20-24.  He further testified that it is "every associate's job to make

sure that the store is at its safest."  Alonso Dep. 132:22-25.  Johnny A. Johnson III, who was

designated by Walmart as its representative on the topic, testified that Walmart's formal policy

was to clean the restrooms once every two hours.  Johnson Dep. 15:4-16:22.  Johnson further

testified that all associates are in charge of safety and ensuring maintenance is performed on the

restrooms.  Johnson Dep. 115:7-20.[4]

---

[3] Nunez testified "I don't recall anything. This happened three years ago, I don't remember." Nunez Dep. 17:9-12; 21:23-25.  He also stated that he went into the restroom "to use the restroom" and affirmed it was not his intent to do a "sweep" of it.  Nunez Dep. 31:4-10.  Alonso testified that the only details from the date of the incident that he remembers are, *after* the incident, taking pictures of the restroom with the company's iPad and briefly taking the incident report.  Alonso Dep. 59:20-60:8; 106:6-12.  He does not recall anything before or after those post-accident steps.  *Id.*

[4] Garcia Pliego offers the expert testimony of Enrique River, a forensic expert who "has extensive technical and practical experience in conducting safety investigations and analyses of premises." PSUF ¶ 20.  River opines, among other things, that a clear liquid hazard would be particularly difficult to perceive on Walmart's restroom floor; that a slip test revealed the floor fell below industry standards regarding how slippery it is when wet; that the locations of the sink, paper towel dispenser, and trash bins in relation to each other could contribute to a higher likelihood of this floor becoming wet and hazardous; and that Walmart's reliance on its employees to identify unsafe conditions when using the restroom for personal reasons is insufficient to maintain a safe premises.  PSUF ¶¶ 22, 26, 29, 41.  Walmart objects to the expert testimony on various grounds. See generally PSUF.  The Court need not and does not rely on the expert testimony for purposes of this order.  Accordingly, the Court declines to rule on Walmart's evidentiary objections at this time.

**II.     Legal Standard**

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* The parties must cite "particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1). The court then views the record in the light most favorable to the nonmoving party and draws reasonable inferences in that party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986). The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (citations omitted).

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the moving party meets its initial burden, the burden shifts to the nonmoving party to produce evidence supporting its claims or defenses and "establish that there is a genuine issue of material fact." *Matsushita*, 475 U.S. at 585. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586 (citation omitted). "The mere existence of a scintilla of evidence in support of the [nonmovant's] position" is insufficient to survive summary judgment. *Anderson*, 477 U.S. at 252.

In the endeavor to establish the existence of a factual dispute, the nonmoving party need not establish a material issue of fact conclusively in its favor. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 252 (quoting *First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

"If the nonmoving party fails to produce enough evidence to create a genuine issue of

1  material fact, the moving party wins the motion for summary judgment.  But if the nonmoving

2  party produces enough evidence to create a genuine issue of material fact, the nonmoving party

3  defeats the motion." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099,

4  1103 (9th Cir. 2000) (citing *Celotex*, 477 U.S. at 322).

5  **III.   Discussion**

6      "To establish an owner's liability for negligence, the plaintiff must prove duty, breach,

7  causation, and damages." *Peralta v. Vons Companies, Inc.*, 24 Cal. App. 5th 1030, 1035 (2018)

8  (citing *Ortega v. Kmart Corp.*, 26 Cal. 4th 1200, 1205 (2001)).  "It is well established in

9  California that although a store owner is not an insurer of the safety of its patrons, the owner does

10  owe them a duty to exercise reasonable care in keeping the premises reasonably safe." *Ortega*,

11  26 Cal. 4th at 1205 (citation omitted).  "This includes a duty to keep the floors safe for patrons'

12  use." *Peralta*, 24 Cal. App. 5th at 1035 (citing *Tuttle v. Crawford*, 8 Cal. 2d 126, 130 (1936)).

13  "A store owner exercises ordinary care by making reasonable inspections of the portions of the

14  premises open to customers, and the care required is commensurate with the risks involved."

15  *Ortega*, 26 Cal. 4th at 1205.

16      An owner of a premises may be liable to a patron for injuries suffered due to a defective

17  condition that an employee of the owner acting within the scope of his employment created.

18  *Hatfield v. Levy Bros.*, 18 Cal. 2d 798, 806 (1941).  In such a case, knowledge of the defective

19  condition is imputed to the owner.  *Id.*  Otherwise, "[t]o impose liability for injuries suffered by

20  an invitee due to [a] defective condition of the premises, the owner or occupier 'must have either

21  actual or constructive knowledge of the dangerous condition or have been able by the exercise of

22  ordinary care to discover the condition, which if known to him, he should realize as involving an

23  unreasonable risk to invitees on his premises.'" *Ortega*, 26 Cal. 4th at 1206 (citation omitted)

24  (alteration in original).

25      In support of its motion for summary judgment, Walmart asserts that the undisputed facts

26  show that Walmart neither created the defective condition nor had actual or constructive

27  knowledge of it such that Walmart can be held liable for Garcia Pliego's injuries.  MSJ 9-12.

28  Garcia Pliego argues that the evidence shows there are triable issues of fact as to whether

Walmart created the condition and whether Walmart had actual or constructive notice of it.

### A. Whether Walmart Created the Hazardous Condition

Garcia Pliego's conclusory claim that Walmart created the dangerous condition that caused Garcia Pliego's injury, *see* Opp'n 12-13, is not supported by any evidence that a Walmart employee created the puddle on the floor. *Id.* Garcia Pliego acknowledges that there is no evidence as to how the hazardous condition was created. As Garcia Pliego does not offer any evidence that a Walmart employee created the hazard, he has not met its burden to demonstrate that there is a triable issue of fact as to this issue. Therefore, Walmart is entitled to summary judgment as to the issue of whether it created the hazard.

### B. Whether Walmart Had Actual Notice of the Hazardous Condition

Garcia Pliego argues that, given the undisputed testimony that there was water on the floor following Garcia Pliego's fall, a reasonable jury could infer that the employees saw the water on the floor when they entered the restroom minutes earlier and that, nonetheless, they failed to remedy or report it. Pl.'s Opp'n 8. Garcia Pliego further asserts that determining the credibility of the employees and whether they saw the condition before Garcia Pliego slipped and fell should be left to the jury. Pl.'s Opp'n 8.

Garcia Pliego may meet his burden of proof through "inferences which may be said to arise reasonably from a series of proven facts." *Ortega*, 26 Cal. 4th at 1206-07. However, as noted, "[i]nferences are not drawn out of thin air, and it is the nonmoving party's obligation to produce a factual predicate from which the inference may be drawn." *Termendzhyan v. Costco Wholesale Corp.*, Case No. CV 18-01646-AB (Ex), 2019 WL 4570016, at *2 (C.D. Cal. July 15, 2019) (citation omitted). "Speculation and conjecture" cannot suffice to defeat a motion for summary judgment. *Ortega*, 26 Cal. 4th at 1205-06.

Garcia Pliego has not offered any evidence that the two employees had actual knowledge of the puddle. He cites no support for the proposition that evidence an employee was in the general area where a dangerous hazard was later discovered is sufficient to support the inference that the employee saw or had notice of the hazard. In these circumstances, there is no evidence of Walmart's actual knowledge, imputed or otherwise. *See Thomas v. Costco Wholesale Corp.*, No.

6

1   2:21-cv-01492-TLN-DB, 2023 WL 5021200, at *5 (E.D. Cal. Aug. 7, 2023) (finding no actual

2   notice where plaintiff established only that employees were "in close proximity" to hazard but not

3   that employees saw or were aware of hazard on ground).

4        As for Garcia Pliego's assertion that the credibility of the employees is a question for the

5   jury, "a desire to cross-examine a witness is simply insufficient to create a genuine issue of

6   material fact." *Cardoza v. Target Corp.*, Case No. CV 17-2232-MWF (RAOx), 2018 WL

7   3357489, at *6 (C.D. Cal. June 22, 2018) (citing *Nat'l Union Fire Ins. Co. of Pittsburgh v.*

8   *Argonaut Ins. Co.*, 701 F.2d 95, 97 (9th Cir. 1983) ("[N]either a desire to cross-examine an

9   affiant nor an unspecified hope of undermining his or her credibility suffices to avert summary

10  judgment.")).

11       Garcia Pliego has not offered any evidence that would indicate that the employees had

12  actual knowledge of the liquid puddle on the restroom floor, and therefore, has not carried his

13  burden to demonstrate that a genuine dispute of material fact exists as to this issue.  Therefore,

14  Walmart is entitled to summary judgment as to the issue of its actual knowledge of the hazard.

15            **C.  Whether Walmart Had Constructive Notice of the Hazardous Condition**

16       In support of its assertion that it did not have constructive knowledge of the puddle,

17  Walmart argues that its two employees were in the restroom within minutes of Garcia Pliego

18  entering and that fewer than two minutes passed between the last of the employees exiting the

19  restroom and Garcia Pliego entering.  MSJ 11.  Given that neither employee recalled seeing any

20  water and that they testified they would have addressed the water if they had seen it, Walmart

21  asserts that the hazard must have been created within the one minute and forty-five second

22  window between the last employee exiting and Garcia Pliego entering.  *Id.*  Walmart argues that,

23  as a matter of law, fewer than two minutes is too short a time for it to have had constructive

24  notice of the hazardous condition on the floor.  *Id.*  In its reply, Walmart further notes that Garcia

25  Pliego has not offered any evidence of when the hazard became present on the floor.  Def.'s

26  Reply 7.

27       "Plaintiffs . . . have the burden of producing evidence that the dangerous condition existed

28  for at least a sufficient time to support a finding that the defendant had constructive notice of the

1    hazardous condition." *Ortega*, 26 Cal. 4th at 1212.  However, "plaintiffs may demonstrate the

2    storekeeper had constructive notice of the dangerous condition if they can show that the site had

3    not been inspected within a reasonable period of time so that a person exercising due care would

4    have discovered and corrected the hazard." *Id.*  "In other words, if the plaintiff can show an

5    inspection was not made within a particular period of time prior to an accident, they may raise an

6    inference the condition did exist long enough for the owner to have discovered it." *Id.* at 1212-

7    13.  "It remains a question of fact for the jury whether, under all the circumstances, the defective

8    condition existed long enough so that it would have been discovered and remedied by an owner in

9    the exercise of reasonable care." *Id.*  As noted above, "[a] store owner exercises ordinary care by

10    making *reasonable inspections* of the portions of the premises open to customers, and the care

11    required is commensurate with the risks involved." *Id.* at 1205 (emphasis added).

12       Walmart argues that summary judgment must be granted because Garcia Pliego has not

13    offered any evidence of when the hazard became present on the floor.  However, as noted, a

14    plaintiff need not put forth evidence of the source of the hazardous condition or the length of time

15    it existed to establish constructive notice, as a plaintiff may rely on evidence of the owner's

16    failure to reasonably inspect the premises within a reasonable period of time to demonstrate that

17    the storeowner had constructive notice of the hazard.  *Ortega*, 26 Cal. 4th at 1203.

18       While Walmart could not be said to have constructive notice regarding a hazard in an area

19    if that area that had been reasonably inspected less than two minutes earlier, *see, e.g.*, *Girvetz v.*

20    *Boys' Market*, 91 Cal. App. 2d 827, 831 (1949) (holding "one and one-half minutes is too short a

21    period" for storeowner to have constructive notice of hazard)*,* there is a material dispute as to

22    whether any such inspection occurred.  It is undisputed that the water hazard existed at the time of

23    the accident and that Garcia Pliego slipped on it.  It is also undisputed that Walmart's

24    maintenance staff did not inspect or clean the bathroom in, at a minimum, the 57 minutes before

25    the accident.  Walmart essentially argues that Nunez and Alonso informally inspected the

26    restroom when they used it a few minutes before the accident, but those witnesses have no

27    recollection of performing any such inspection.

28       There is a material dispute of fact concerning whether Nunez and Alonso's presence in the

1  restroom a few minutes prior to Garcia Pliego constituted a "reasonable inspection" of the

2  restroom.  Neither employee recalled any specifics concerning what they observed in the

3  restroom.  Nunez entered the restroom for personal reasons and Alonso does not remember why

4  he entered the restroom or what he did in there.

5       Walmart argues in its motion that it "has trained its employees to periodically inspect the

6  premises for any potentially hazardous conditions" and "even when using the restroom,

7  [Walmart's] employees are always on the lookout for potentially hazardous conditions."  MSJ 11.

8  However, Walmart does not identify any testimony for this proposition.  Though Walmart's

9  statement of undisputed facts also states that "Walmart employees are trained to continually and

10 frequently monitor the store premises for safety hazards," DUMF ¶ 14, the evidence that Walmart

11 cites for this proposition does not support it.  The cited portions of Alonso's and Nunez's

12 depositions state that if they had seen a puddle or hazard, they would have addressed it by either

13 cleaning it or contacting a maintenance staff, but neither employee indicated they were trained to

14 actively look for hazards when entering the restroom for personal purposes.  Alonso and Nunez

15 testified that they did not enter the restroom to inspect it for hazards, and there is no evidence that

16 employees are actively trained to look for hazards when using the restroom for personal purposes.

17      A reasonable jury could find that Nunez and Alonso did not conduct a "reasonable

18 inspection" when they were briefly present in the restroom for personal purposes.  *See Sorensen*

19 *v. Target Corp.*, Case No. 12-cv-04025-JCS, 2013 WL 6513827, at *6 (N.D. Cal. Dec. 10, 2013)

20 (holding that whether inspections were reasonable under circumstances was question for jury

21 where employee walked perpendicularly to affected aisle moments before slip and fall and no

22 employee had walked directly through aisle for about 20 minutes); *Navarro v. Target Corp.*, No.

23 2:11-cv-00041-GEB-JFM, 2012 WL 2873496, at *2-4 (holding that whether inspection was

24 reasonable under circumstances was question for jury where employee "had been through the

25 area" about 10 minutes before plaintiff slipped there, but was performing another task and did not

26 testify she formally inspected the area).

27      Summary judgment is not appropriate where employees were in or nearby the area where

28 a plaintiff soon after slipped on a hazard but there is no evidence that the employees undertook an

inspection of the area. *See Thomas*, 2023 WL 5021200, at *5 (denying summary judgment where plaintiff's slip and fall happened near counter where four employees were stationed, but there was no evidence before court that employees were trained to independently inspect for hazards near where they worked or did so, despite defendant's assertion without evidence in its motion that they were); *Bean v. Costco Wholesale Corp.*, 561 F. Supp. 3d 915, 923 (E.D. Cal. Sept. 20, 2021) ("The jury must decide whether a store owner exercising ordinary care should have been on notice of a slip and fall hazard located . . . within feet of three employees, and approximately 45 minutes after employees conducted . . . floor inspections."); *Flores v. Target Corp.*, Case No. 2:16-CV-1543 JCM (CWH), 2018 WL 2284372, at *1, *4 (D. Nev. Feb. 16, 2018) (denying defendant's summary judgment motion where manager was in restroom five minutes prior to plaintiff entering restroom and slipping and falling, manager's use of restroom lasted thirty seconds and was for personal reasons, and manager testified he did not see anything on floor).

Further, the video footage shows that no employee entered the restroom with a cleaning cart in the 57 minutes prior to Garcia Pliego's entrance. Given that evidence, a reasonable jury could find that the restroom was not reasonably inspected or cleaned for at least 57 minutes prior to Garcia Pliego's slip and fall. Pl.'s Opp'n 11. A reasonable jury could find that, under the circumstances, 57 minutes or more is too long of a period to pass without an inspection.

As there is a genuine dispute of fact regarding whether Walmart reasonably inspected the restroom under the circumstances, summary judgment regarding whether Walmart had constructive notice of the hazard is not appropriate.

///

///

///

///

///

///

///

///

10

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CONCLUSION**

For the foregoing reasons, Walmart's motion for summary judgment is granted in part and denied in part.  Summary judgment is granted as to the issues of whether Walmart created the hazard and whether Walmart had actual notice of the hazard.  Summary judgment is denied as to the issue of whether Walmart had constructive notice of the hazard.

IT IS SO ORDERED.

   Dated:   November 7, 2024   

UNITED STATES DISTRICT JUDGE

11